UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

FRONTIER RECOVERY, LLC,                                             09-CV-6017-TC

                     Plaintiff,

             v.                                      FINDINGS AND RECOMMENDATION

LANE COUNTY, an Oregon political
subdivision,

                     Defendant.

COFFIN, Magistrate Judge:

        Plaintiff Frontier Recovery brings this action under the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901 et seq., to seek payment for clean up costs associated with Lane County's operation of a landfill. Plaintiff also brings pendant state law claims. Defendant Lane County filed a motion for summary judgment on all claims asserted by plaintiff. I heard oral argument on this motion March 26, 2010. For the reasons outlined below, I recommend that this court grant defendant's motion for summary judgment in part, and deny it in part.

///

Page 1 - FINDINGS AND RECOMMENDATION

## Background

Plaintiff is the current owner of the former Bethel-Danebo Landfill Site, and the successor in interest to Lane Plywood, Inc. Defendant owned the site from 1974-1978, and operated it as a solid waste landfill. Defendant transferred the site to Lane Plywood, Inc. in 1978. Lane Plywood primarily used the property to stockpile logs.

Plaintiff now wishes to develop the site for light industrial and commercial use, but has discovered methane gas concentrations and other contamination that will require mitigation prior to development. Under the advice and guidance of the Oregon Department of Environmental Quality (DEQ), plaintiff has undertaken mitigation efforts to minimize the damage to the site and avoid Oregon DEQ enforcement action. In the instant action, plaintiff alleges violation of the landfill's permit, which was issued by the Oregon DEQ in June 1976. Four months later, in October 1976, Congress enacted RCRA. Frontier alleges RCRA violations dating from October 1976 onward.

## Legal Standard

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). There must be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the burden shifts to

Page 2 - FINDINGS AND RECOMMENDATION

the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim. Id.; see also, Bhan v. NME Hosp., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir. 2000). In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for trial." Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. On the other hand, if, after the court has drawn all reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted. Id.

## Discussion

Congress enacted RCRA in 1976 to promote the protection of health and the environment by regulating hazardous waste management from generation to disposal. 42 U.S.C. § 6902. As part of its enforcement scheme, RCRA allows for citizen suits by private parties to help seek compliance with RCRA's mandates. There are two main types of citizen suit actions available under RCRA. The first type of action, under subsection (A), governs suits to enforce permit and rule standards and conditions. 42 U.S.C. 6972 (a)(1)(A). The second type of action, under subsection (B), addresses activities that pose an imminent and substantial endangerment to health and the environment. 42 U.S.C. 6972 (a)(1)(B). Plaintiff brings suit under both of these provisions.

Both subsections allow for the same remedy. Under the citizen suit provisions, the court has the jurisdiction "to enforce the permit standard, regulation, condition, requirement, prohibition, or order . . ., to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste . . ., to order such person to make such other action as may be necessary, or both, or to order the Administrator to perform the act or duty . . ., as the case may be, and to apply any appropriate civil penalties under . . . this title." 42 U.S.C. § 6972(a). Defendant seeks summary judgment on both of plaintiff's citizen suit actions. Defendant also seeks summary judgment on plaintiff's various state law claims.

## I.    Permit and Rule Violations

Plaintiff's claim under RCRA's subsection (A) alleges violations of defendant's Oregon DEQ permit and seeks recovery of clean up costs associated with the violations. Defendant argues that it is entitled to summary judgment on this claim because the Oregon permit did not become effective pursuant to RCRA. RCRA states that "any person may commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which <u>has become effective pursuant to this chapter</u> . . ." 42 U.S.C. 6972(a)(1)(A) (emphasis added).

Defendant argues that the Oregon permit of which plaintiff alleges violation predates RCRA's enactment, and thus cannot be effective pursuant to RCRA. The Oregon DEQ permit was issued in June 1976, three months prior to RCRA's enactment in October 1976. Plaintiff counters that an existing permit that is within RCRA's purview can become effective pursuant to RCRA in two scenarios: "(1) at the time the rule or permit becomes effective, if the effective

Page 4 - FINDINGS AND RECOMMENDATION

date is after the enactment of RCRA; or (2) at the time RCRA is enacted, if the rule or permits are already in effect, is within the scope of RCRA and governs the conduct of post-RCRA enactment activities." Plaintiff argues that this case falls into the second scenario, and therefore DEQ permit and rules at issue in this case became effective pursuant to RCRA at the time of RCRA's enactment. I agree with the defendant, and find that DEQ permit and rules at issue did not become effective pursuant to RCRA.

The parties each rely on Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d. 1149 (9th Cir. 1989), to support their argument. Ascon, however, is not on point: it considered a permit which was not ever in existence at the same time as RCRA. The Ascon court, therefore, concluded that it was a legal impossibility that a permit which ceased to exist before RCRA was enacted could have been enacted pursuant to RCRA. Id. at 1158-59. The instant case presents a different scenario. It involves a permit that overlapped with RCRA but was issued three months prior to RCRA's enactment. The question before me is whether a permit which was issued prior to RCRA can be considered to have been effective pursuant to RCRA simply because both existed at the same time.

The plain language of subsection (A) requires that a permit become effective pursuant to RCRA before any enforcement action can be taken under RCRA. 42 U.S.C. § 6972(a)(1)(A). RCRA envisions that solid waste permits be enacted pursuant to RCRA by means of a state solid waste plan. Under RCRA, states are directed to develop and implement solid waste plans. 42 U.S.C. § 6941. RCRA sets forth certain minimum requirements for state solid waste plans. 42 U.S.C. § 6943. These solid waste plans must be approved by the EPA. 42 U.S.C. § 6947. The 9th Circuit has indicated that a state program "becomes effective pursuant to" RCRA when the

Page 5 - FINDINGS AND RECOMMENDATION

EPA authorizes the state program. <u>Ashoff v. City of Ukiah</u>, 130 F.3d 409, 411 (9th Cir. 1997). Many other courts looking at the issue have come to the same conclusion. See <u>Murray v. Bath Iron Works Corporation</u>, 867 F. Supp. 33, 43 (D. Maine 1994); <u>City of Gallaton v. Cherokee County</u>, 563 F. Supp. 940, 948 (E.D. Texas 1983); <u>Sierra Club v. Chemical Handling Corp.</u>, 824 F. Supp. 195, 197 (D. Colo. 1993). In following the plain language of the statute and this line of cases, I find that a state program must be authorized by the EPA in order for a state law, rule, standard, or permit issued under that state program to "become effective pursuant to" RCRA.

In this case, there is no evidence in the record that Oregon took any affirmative action to bring its solid waste program or the accompanying permits under RCRA's purview at any point when Lane County's permit was in effect. Nor is there any evidence in the record that the EPA approved such a program to complete the final step of bringing the program under RCRA's purview. Since there is no evidence that the Oregon DEQ permit at issue was ever brought under RCRA's purview, I find that the permit did not become effective pursuant to RCRA. Therefore, plaintiff cannot bring its action under subsection (A).

Accordingly, I recommend that the court grant summary judgment for the defendant on plaintiff's action under RCRA § 6972(a)(1)(A).

## II.   <u>Imminent and Substantial Endangerment</u>

Plaintiff's claim under RCRA's subsection (B) alleges that defendant's prior operation of the landfill presents an imminent and substantial endangerment to health or the environment. Defendant argues that it is entitled to summary judgment on this claim because plaintiff failed to satisfy the mandatory notice requirements for a subsection (B) action. RCRA states:

> No action may be commenced under subsection (a)(1)(B) of this section prior to <u>ninety days</u> after the plaintiff has given notice <u>of the endangerment</u> to--

(i) the Administrator;
    (ii) the State in which the alleged endangerment may occur;
    (iii) any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B) of this section . . .

42 U.S.C. 6972 (b)(2)(A) (emphasis added).

Plaintiff's notice consisted of a letter and a draft of the original complaint mailed to defendant on November 13, 2008. (Unsworn decl. Christine Phillips, at *9 (dkt. #45)). The letter stated that it will serve as plaintiff's notice of intent to sue under the citizen suit provision of RCRA, and pursuant to 40 C.F.R. Part 254. The citizen suit provision includes both subsection (A) and subsection (B) actions. 42 U.S.C. § 6972(a). 40 C.F.R. Part 254 requires certain language be included in the notice for a citizen suit action alleging permit and rule violations. 40 C.F.R. Part 254.3(a). Plaintiff did not state which cause of action it was alleging in the letter or the attached complaint. Plaintiff did, however, state the language required under 40 C.F.R. Part 254 for permit and rule violations in its complaint. Plaintiff filed its original complaint on January 15, 2009, 63 days after serving notice on defendant. On March 4, 2009 plaintiff filed its first amended compliant. On October 6, 2009, almost a year after its initial notice, plaintiff filed its second amended complaint. For the first time, the seconded amended complaint alleged that the landfill posed an imminent and substantial endangerment to health or the environment. (Doc. 26, p. 5).

I first consider defendant's argument that summary judgment is warranted because plaintiff failed to provide sufficient notice of the endangerment, as required under RCRA § 6972 (b)(2)(A). Neither party has cited relevant case law from this district on this issue. However, when considering this issue, a trial court in the District of Colorado determined that

Page 7 - FINDINGS AND RECOMMENDATION

the relevant question for a subsection (B) claim was "whether the notice was sufficient to inform [defendant] of the nature of the ongoing problems on the facility site and of its potential responsibility for those problems," and whether it was sufficient to give defendant a chance to bring itself in compliance with RCRA. Bd. of County Comm'rs of the County of La Plata, Colo., 598 F. Supp.2d. 1185, 1197 (D. Colo. 2009). The court found the notice letter sufficient when it indicated an intent to bring suit under subsection (B), listed specific chemicals dumped on the property, and indicated that the prior releases had ongoing health ramifications. Id.

I find the La Plata holding instructive. The complaint plaintiff attached to its notice letter stated that the landfill "has methane gas concentrations and other regulated contaminants... resulting from its prior use as a landfill, and [the] contamination [will] require mitigation." (Doc. 1, p. 3). This notice was sufficient to inform defendant of the nature of the problems and its potential responsibility for the problems. It was also sufficient to give defendant a chance to bring itself in compliance with RCRA. While plaintiff did not specifically allege a cause of action under subsection (B) as in La Plata, it did notify defendant it intended to bring a citizen suit under RCRA, and left open the possibility of both subsection (A) and subsection (B) actions. Plaintiff also alleged that the methane gas concentrations resulted from the site's prior use as a landfill. Methane gas is a known health hazard, therefore I cannot conclude that plaintiff's failure to state that the methane gas poses a threat to human health renders its notice insufficient. I find that plaintiff gave sufficient notice of the endangerment under RCRA.

Defendant further argues that it is entitled to summary judgment because plaintiff failed to meet RCRA's 90 day notice requirement under RCRA § 6972 (b)(2)(A). Plaintiff's complaint and amended complaints each state that plaintiff gave 60 day notice as required by RCRA §

Page 8 - FINDINGS AND RECOMMENDATION

6972. Plaintiff did not specifically allege a cause of action under subsection (B) until it filed its second amended complaint. The defendant alleges that the statute specifically requires 90 day notice and plaintiff's filing of its second amended complaint did not cure its failure to provide 90 day notice. Defendant also alleges that plaintiff's November 13, 2008 notice did not sufficiently notify it of an endangerment as required by the statute. Plaintiff alleges any notice defects were cured by filing the second amended complaint well after the 90 day period had expired. Plaintiff maintains that its notice was sufficient to make defendant aware that it may have an action under subsection (B). I find that plaintiff's notice meets the 90 day requirement, and provided defendant with sufficient notice of the endangerment.

Both parties rely on Zands v. Nelson, 779 F. Supp. 1254 (S.D. Cal. 1991), to support their argument regarding the requisite 90 day notice. In Zands, the court held that the 90 day notice requirement was satisfied when the plaintiff filed his third amended complaint more than one year after initially giving notice. Id. at 1259. The Zands court deemed the subsection (B) action commenced at the time the third amended complaint was filed. Id. at 1259. Thus, the subsection (B) action was filed nearly a year after plaintiff gave the required notice. The court also noted that it was irrelevant that the plaintiff's letter stated he was giving 60 day notice instead of 90 day notice. Id. at 1259 n.2. In Buggsi, Inc. v. Chevron U.S.A., Inc., 857 F. Supp. 1427, 1430 (D. Or. 1994), the District of Oregon followed the reasoning in Zands.

Here, as in Zands, plaintiff did not allege that it was bringing a subsection (B) claim until it filed its second amended complaint, nearly a year after giving its original notice. Since plaintiff did not add its subsection (B) claim until filing its second amended complaint, the subsection (B) action will be deemed to commence on the date the second amended complaint

Page 9 - FINDINGS AND RECOMMENDATION

was filed. The subsection (B) action was commenced well over 90 days after plaintiff gave the required notice to defendant, and therefore plaintiff's notice meets the 90 day requirement under RCRA.

In the alternative, defendant urges that the court dismiss plaintiff's claim for imminent and substantial endangerment because plaintiff caused the risk of the endangerment. I find, however, that who caused the contamination at issue–defendant or plaintiff, hinges on factual determinations best left to a jury.

Accordingly, I recommend that the court deny defendant's motion summary judgment on plaintiff's action under RCRA § 6972(a)(1)(B).

## III.  Harm to Natural Resources

Before considering defendant's motion for summary judgment on plaintiff's state law claims for cost recovery and contribution, I consider defendant's assertion that these claims must fail because there is no evidence of remediation attributable to harm to "natural resources." Specifically, defendant argues that "natural resources" is a statutorily defined term, and that the statute requires state ownership or control of the resource. Id. Plaintiff argues that many cases have interpreted the statute to allow for statutory cost recovery or contribution actions for remediation actions on private property.

Under Chapter 465, "natural resources" is a statutorily defined term. Natural resources "includes but is not limited to land, fish, wildlife, biota, air, surface water, ground water, drinking water supplies and any other resource owned, managed, held in trust or otherwise controlled by the State of Oregon or a political subdivision of the state." ORS 465.200(18). The record shows evidence of possible groundwater contamination. (Dep. Ben Masengil, pp. 7-8 (dkt. 51-

Page 10 - FINDINGS AND RECOMMENDATION

2)(discussion oil saturated soil which may have been dumped in the landfill). I find that there exists a question of material fact as to whether there is harm to natural resources.

### IV. State Statutory Claim for Cost Recovery

Plaintiff seeks recovery of past costs under ORS 465.255. Defendant argues that it is entitled to summary judgment on this claim because plaintiff is a potentially responsible party (PRP) under Oregon law and thus barred from a cost recover action. Plaintiff asserts that it is not a PRP because an exception exists for a property owner who takes reasonable steps to investigate and mitigate environmental hazards on his land.

Under Oregon law, plaintiff is a PRP if it owned or operated a facility during a time the hazardous materials were being released or it if owned or operated a facility after the time that hazardous material were released <u>if it knew or reasonably should have known of the release</u>. ORS 465.255(1)(emphasis added). There is an issue of material fact as to whether plaintiff knew or should have known of the methane gas problems at the property. (Pl.'s Resp. to Def.'s Concise Stmt Facts, ¶ 22-23 (dkt. #51)). Plaintiff asserts through declarations and in deposition testimony that it developed the site in reliance on statements from the defendant and DEQ that the County had properly operated and closed the landfill and that there were no serious environmental problems at the site. (Id. ¶ 22). I find that a reasonable trier of fact could conclude that plaintiff conduced all reasonable inquiries prior to purchasing the property and thus did not know nor reasonably could have known of the methane gas issues. Accordingly, the court should deny summary judgment on this claim.

### V. State Statutory Contribution Claim

Plaintiff seeks contribution from defendant under ORS 465.257. Defendant argues that in

Page 11 - FINDINGS AND RECOMMENDATION

order to make a claim for contribution under Oregon law, DEQ must have required some type of remedial action. Plaintiff contends that the relevant case law only requires some form of DEQ involvement.

"ORS 465.315(1)(b) anticipates that the Director of the DEQ 'shall select or approve remedial actions...' and §465.400(2) directs DEQ to 'adopt rules establishing the level, factors, criteria, or other provisions for the degree of cleanup including...the selection of remedial actions necessary to assure protection of the public.'" McDonald v. Sun Oil, 548 F.3d 774, 785 (9th Cir. 2008). The Ninth Circuit has interpreted this rule as "suggest[ing] that the determination whether remedial action will occur will be made by DEQ, after a preliminary assessment is made, not by the parties." Id. Thus, in order to proceed with remedial action, it was necessary for plaintiff to get approval from DEQ. Id. Here, the record shows that plaintiff and DEQ entered into an arrangement entitled "Voluntary Cleanup Agreement in 1998 whereby DEQ became involved in "investigating the site, 'recommending' mitigation and remediation activities, and monitoring [plaintiff's compliance] with such 'recommendations.'" (Pl.'s Resp. to Def.'s Concise Stmt Facts, ¶ 14 (dkt #51)). Plaintiff asserts that despite the title "Voluntary Cleanup Agreement," its actions were hardly voluntary. Id. Plaintiff asserts that it entered into the agreement only because if it did not, DEQ would have brought an enforcement action which could have resulted in civil penalties. Id. It appears from the record that plaintiff secured DEQ's approval for their remedial action and there is a question of fact regarding whether plaintiff was required to undertake such action; therefore, summary judgment is not appropriate on this claim.

## VI.    State Common Law Claim for Indemnity

Defendant alleges that plaintiff cannot satisfy the elements of an indemnity claim.

Page 12 - FINDINGS AND RECOMMENDATION

Plaintiff asserts that it has raised a genuine issue of material fact as to each element of its indemnity claim. Oregon requires that a party asserting an indemnity claim establish that: (1) it has discharged an obligation owed to a third party; (2) the opposing party was also liable to the third party; and (3) as between the claimant and the opposing party, the obligation should be discharged by the opposing party. Maurmann v. Del Morrow Const., Inc., 182 Or. App. 171, 177 (2002).

First, defendant asserts that DEQ is not a third party to whom plaintiff owes an obligation on the grounds that plaintiff's remedial actions have, to date, been voluntary. This argument is not convincing. As I previously noted, there is an issue of fact whether plaintiff's actions are truly "voluntary" as plaintiff asserts it only undertook its remedial action to avoid a threatened enforcement action and possible civil penalties.

Second, defendant asserts that plaintiff cannot establish that it has discharged its obligation owed to a third party, which, in this case is DEQ. The crux of defendant's argument is that because DEQ could bring another enforcement action at some point in the future, plaintiff cannot establish that it has satisfied its obligation to DEQ. Plaintiff asserts that is has in the past and continues to discharge its obligation to DEQ (and the state of Oregon) by complying with it remediation agreement with DEQ. (Pl.'s Resp. to Def.'s Concise Stmt Facts, ¶ 14 (dkt #51)). A review of the record shows that plaintiff continues to be under continued obligation to provide DEQ with monitoring data. (Pl.'s Resp. to Def.'s Concise Stmt Facts, ¶ 14 (dkt #51)). Other courts have found that remediation obligations are not complete until the appropriate government agency issues a closure letter. Beverage Realty, Inc. v. Chatham Club, LLC, 2003 WL 44572 (N.D. Ill. Feb. 21, 2003); see also, RCRA and Superfund: A Practice Guide, 3rd § 4:27 (2009).

Page 13 - FINDINGS AND RECOMMENDATION

The instant case is distinguishable from Maurmann v. Del Morrow Const., Inc., 182 Or. App. 171, 177 (2002) because in that case the developer had completed remediation of landslides but could not guarantee that future landslides would not occur. In the instant case, plaintiff's remediation obligation is not complete until it receives a closing letter from DEQ. Accordingly, I find that plaintiff cannot establish that it has discharged its obligation owed to DEQ, and I recommend that the court grant summary judgment on this claim without prejudice to refiling if plaintiff receives a closing letter.

### VII.    State Common Law Nuisance Claim

Defendant moves for summary judgment on plaintiff's common law nuisance claim on two grounds: (1) that this claim is not timely under the Oregon Tort Claims Act; and (2) that common law nuisance does not recognize a claim of nuisance brought by a purchaser of land against a vendor. I find that common law nuisance does not recognize a claim brought by a purchaser of land against a vendor and do not reach the timeliness issue.

Plaintiff cites no cases in Oregon–or in any other jurisdiction, which have allowed a property owner to cue a predecessor for nuisance. Instead, plaintiff cites two Oregon cases which hold that the doctrine of caveat emptor does not apply if the seller makes fraudulent statements or other misrepresentations to the seller about the property. Swank v. Battaglia, 84 Or. 159, 163 (1917); Miller v. Protrka, 193 Or. 585 (1951). While it is interesting to know how Oregon courts have handled the doctrine of caveat emptor, cases from other jurisdictions concerning nuisance claims are more instructive here. In Philadelphia Electric Co. v. Hercules, Inc., 762 F.2d. 303 (3d Cir. 1985), the third circuit held that a predecessor in interest to a property was not liable to a later purchaser of the property for a nuisance. Id. at 313-15. In reaching this conclusion, the

Page 14 - FINDINGS AND RECOMMENDATION

court relied on "the historical role of private nuisance law as a means of efficiently resolving conflicts between neighboring contemporaneous land uses." Id. at 314 & n. 9 (internal citations omitted). The court further observed that the goal of nuisance law "is to achieve efficient and equitable solutions to problems created by discordant land uses." Id. at 314 & n. 10. The court recognized that an extension to the common law of private nuisance "is particularly hazardous in an are such as environmental pollution, where Congress and the state legislatures are actively seeking to achieve a socially acceptable definition of rights and liabilities." Id. at 315.

I find the reasoning of Philadelphia Elec. persuasive, and I follow the majority of the courts and find that a property owner may not sue a predecessor to a property for a nuisance on the property. See e.g., 55 Motor Ave. Co. v. Liberty Indus. Finishing Corp., 885 F. Supp. 410, 421-22 (E.D.N.Y. 1994)(other courts employing reasoning similar to that in [Philadelphia Elec] have consistently rejected the efforts of property owners who discover contamination on their properties to maintain a private nuisance action against former owners); Lily Indus., Inc. v. Health-Chem Corp., 974 F. Supp. 702, 705-08 (S.D. Ind. 1997)("The law of private nuisance, both in Indiana and in most of the United States, provides a mechanism for resolving conflicts between competing, simultaneous uses of nearby property by different landowners"); Hanlin Group, Inc. v. Int'l Minerals & Chem. Corp., 759 F. Supp. 925, 935 (D. Me. 1990)("other courts have consistently rejected such an argument" that a nuisance claim lies in an action between successive landowners). Accordingly, I recommend that the court grant defendant's motion for summary judgment on plaintiff's nuisance claim.

## VIII. Alternative Motion on Oregon Tort Claims Act

Defendant asserts that it is entitled to summary judgment on all of plaintiff's state law

Page 15 - FINDINGS AND RECOMMENDATION

claims because these claims are subject to the damage limitations specified in the Oregon Tort Claims Act, ORS 30.270. Neither party, however, briefed these issues. I decline to consider this claim, which upon cursory research appears to be one of first impression (at least with regard to the claims brought by plaintiff). Accordingly, I recommend that the court deny defendant's motion for summary judgment under the Oregon Tort Claims Act.

## Conclusion

I recommend that this court deny defendant's motion for summary judgment on:

    Plaintiff's claim under RCRA's subsection (B);

    Plaintiff's state statutory claim for cost recovery; and

    Plaintiff's state statutory contribution claim.

I recommend that this court grant defendant's motion for summary judgment on:

    Plaintiff's claim under RCRA's subsection (A);

    Plaintiff's state common law claim for indemnity without prejudice to refiling if plaintiff receives a closing letter from DEQ; and

    Plaintiff's state common law nuisance claim.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen

///

days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 14th day of April 2010.

THOMAS M. COFFIN
United States Magistrate Judge

Page 17 - FINDINGS AND RECOMMENDATION